## PITTSBURGH HOTELS CO. v. COMMISSIONER OF INTERNAL REVENUE.
### No. 4291.
Circuit Court of Appeals, Third Circuit.
Sept. 11, 1930.

chinery, and there is no controversy here as to the rate on them.

The William Penn Hotel has nineteen stories above the ground and three stories below. It is 265 feet in height. That part of the building on which 3½ per cent. depreciation is claimed, and constitutes the controversy here, costs $2,378,822.09.

The determination by the Commissioner of 2 per cent. depreciation is prima facie correct and must stand unless overcome by substantial evidence. The Board said that:

"The Commissioner introduced two witnesses who testified in his behalf before the Court of Claims and in substance stated the allowance customarily made by the Commissioner for depreciation of buildings of the character and construction of the William Penn Hotel building is 2 per cent. per annum. The testimony of these witnesses adds no weight to the prima facie correctness of the Commissioner's determination."

This left the case standing on the presumption of correctness of the determination by the Commissioner, for the two witnesses who testified for him are clerks in his office, never saw the property, and all their depositions amounted to was to state that the general policy of the Department on property of this general class was to allow a 2 per cent. annual depreciation. In other words, according to their testimony, in making allowance for depreciation, the Commissioner does not consider the circumstances surrounding the property and the particular facts affecting depreciation in any individual property. It is a well-known fact that in the same locality property which is not used with due care, not kept well painted, and in good repair generally, will depreciate much more rapidly than property which has been well kept. Property in one locality depreciates more rapidly than in another locality. Depreciation is a fact which in any particular case must be determined from the testimony of competent witnesses who know the facts upon which a just conclusion must be predicated. The Bureau of Internal Revenue published a bulletin of instructions for its agents which was in force at the time the taxes in question were determined, entitled, "Bulletin F—Income Tax—Depreciation and Obsolescence—Revenue Act of 1918." On page 26 of that bulletin the following instruction is given:

"It is considered impracticable to prescribe fixed, definite rates of depreciation which would be allowable for all property of a given class or character. The rate at which

S. Leo Ruslander, of Pittsburgh, Pa. (George R. Beneman, of Washington, D. C., and Samuel Kaufman, of Pittsburgh, Pa., of counsel), for petitioner. .

G. A. Youngquist, Asst. Atty. Gen., and J. Louis Monarch and John Vaughan Groner, Sp. Asst. Attys. Gen. (C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and Frank M. Thompson, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., of counsel), for respondent.

Before BUFFINGTON and DAVIS, Circuit Judges, and JOHNSON, District Judge.

DAVIS, Circuit Judge.

The petitioner filed a consolidated income and profits tax return which included the income of its subsidiaries, among which was the William Penn Hotel Company, which operated the William Penn Hotel in Pittsburgh, Pa. In the returns, the petitioner claimed 3½ per cent. depreciation for "exhaustion, wear and tear," but the Commissioner on a reaudit allowed only 2 per cent., and the petitioner appealed to this court.

The parts of the building on which the 3½ per cent. rate of depreciation is claimed consists of the foundations, framework, walls, roof, floors, trimming, inside stairways of steel and reinforced concrete, and other fixtures. Depreciation has been allowed at a higher rate on plumbing fixtures, heating and ventilating systems, electric wiring, elevators, lighting fixtures, tile floors, and elevator ma-

property depreciates necessarily depends upon its character, locality, purpose for which used, and the conditions under which it is used. * * * The taxpayer should in all cases determine as accurately as possible according to his judgment and experience the rate at which his property depreciates. The rate used will, however, be subject to the approval of the Commissioner."

In the Revenue Acts of 1918 and 1921, in computing the net income of corporations subject to the tax, there shall be allowed as deductions: "A reasonable allowance for the exhaustion, wear and tear of property used in the trade or business, including a reasonable allowance for obsolescence." Section 214(a)(8), 40 Stat. 1067, 42 Stat. 240.

█ Neither the Revenue Acts nor the Regulations define what is a "reasonable" allowance for depreciation. Each case depends upon its own facts. This principle of determining depreciation was declared by the Board of Tax Appeals in the case of Appeal of Eagle Dye Works, 1 B. T. A. 638, where the Board said:

"The probable useful life of the building and the amount of depreciation which should be allowed thereon must be determined from facts and circumstances, the materials of which the building is constructed, and the nature and character of the business for which it is used."

In Appeal of Elsie S. Eckstein, 2 B. T. A. 19, it further said:

"From the testimony of 11 expert witnesses familiar with the locality and conditions and the various exhibits introduced in evidence, we find the probable useful economic life of both buildings from the respective dates of their construction to be 33⅓ years, and a reasonable allowance for the exhaustion, wear and tear of the buildings, including a reasonable allowance for obsolescence, to be at the rate of 3 per cent. upon the respective costs of the buildings from the dates of their construction."

Six expert witnesses, who were familiar with the hotel business and hotel property generally, and several with the William Penn Hotel particularly, testified in behalf of the petitioner that the economic and useful life of hotel property was not so long as similar property used in another "trade or business"; that an office building is used only about 8 or ten hours a day, while hotel property is used 24 hours a day and 365 days a year; that the William Penn Hotel property is "no longer up-to-date" and was not considered of modern construction by hotel men; that air in Pittsburgh is full of smoke, gas, and dirt, which shortens the life of both the interior and exterior of buildings in Pittsburgh to a greater degree than elsewhere; that 4 per cent. was a reasonable allowance for annual depreciation on the William Penn Hotel.

██ There was no contradiction whatever of this testimony. The Board as a general principle of law may reject expert testimony and reach a conclusion in accordance with its own knowledge, experience, and judgment, but it must itself have knowledge of the subject-matter and experience with it. There is no evidence whatever that the Board has any independent knowledge of the William Penn Hotel or the particular facts which in this case and locality produce depreciation. It could not, therefore, arbitrarily disregard all the affirmative and positive testimony applicable to depreciation in this particular case. Idaho Power Co. v. Thompson, 19 F.(2d) 547, 562 (D. C. Idaho); W. S. Bogle & Co., Inc. v. Commissioner, 26 F.(2d) 771 (C. C. A. 7); Boggs & Buhl, Inc. v. Commissioner, 34 F.(2d) 859 (C. C. A. 3); Head v. Hargrave, 105 U. S. 45, 49, 26 L. Ed. 1028; The Conqueror, 166 U. S. 110, 17 S. Ct. 510, 41 L. Ed. 937.

█ The presumption of correctness of the determination of the Commissioner was overcome by the positive testimony of the petitioner which stands unimpeached. It does not appear that the Board itself had any information on which it could predicate a contrary conclusion. It was error, therefore, for the Board to ignore this testimony.

The order of redetermination of the Board is reversed, the determination of the Commissioner set aside, and the income tax return of the petitioner approved.