## RALSTON STEEL CAR CO. v. COMMISSIONER OF INTERNAL REVENUE.

### Nos. 5747, 5748.

Circuit Court of Appeals, Sixth Circuit.

Nov. 3, 1931.

Petitions for Rehearing Denied Dec. 30, 1931.

Edw. C. Turner, of Columbus, Ohio (Albert M. Calland, of Columbus, Ohio, on the brief), for petitioner.

M. K. Rothschild, of Washington, D. C. (G. A. Youngquist, Asst. Atty. Gen., and Sewall Key and A. G. Divet, both of Washington, D. C., on the brief), for respondent.

Before HICKS and HICKENLOOPER, Circuit Judges, and SIMONS, District Judge.

HICKENLOOPER, Circuit Judge.

In computing the amount of the "invested capital" of a corporation, to be used in assessing federal excess profits taxes, the definition contained in the pertinent act is controlling. Two general factors must be taken into consideration: (1) The amount (in money or money's worth) actually paid in for capital stock and as surplus; and (2) the amount of earned surplus and undivided profits used or employed in the business. Borrowed money, although used in the business, may not be included; nor is the amount of the surplus to be affected by an increment in the value of fixed assets after the same were acquired. La Belle Iron Works v. U. S., 256 U. S. 377, 41 S. Ct. 528, 65 L. Ed. 998. Subject also to the other limitations therein provided, tangible or intangible property paid in for capital stock is to be taken at its money value at the time of payment. Neither the value of such property during a later tax year, nor the March 1, 1913, value, is of importance in fixing the initial amount of capital and paid-in surplus, that is, the "invested capital" with which the company started business.

If the "invested capital" becomes impaired by the operation of the business, the amount thereof to be used in computing excess profits taxes nevertheless remains the same as before such impairment. The amount paid in for capital stock or as sur-

plus thus forms a minimum, and is not affected by subsequent operating losses. Compare Willcuts, Collector v. Milton Dairy Co., 275 U. S. 215, 48 S. Ct. 71, 72 L. Ed. 247. Conversely, where there is no impairment, but the conduct of the business has resulted in an *earned* surplus or undivided profits, and these earnings are left with the company to be employed in its business, the amount thereof is to be added to the *paid-in* capital and surplus and the sum will represent the "invested capital" for taxation purposes. In such case the true amount of earned surplus and undivided profits can be determined only by annually depreciating consumable, wasting, or depreciable assets. Such depreciation is essentially an item of expense and must be taken into consideration to the end that the books of the company may accurately reflect its true financial condition. So, also, it is wholly immaterial whether the company has or has not made deductions from income for such depreciation during prior years. Regulations 45, art. 838, has been held correctly to interpret section 326 (a) (3) of the Revenue Act of 1918 (40 Stat. 1092), and such regulation is here controlling. Willcuts v. Milton Dairy Co., supra. Compare United States v. Ludey, 274 U. S. 295, 47 S. Ct. 608, 71 L. Ed. 1054.

It follows from what has already been stated that the Commissioner and the Board of Tax Appeals were right in requiring the patents, which were transferred to the petitioner at the time of organization in payment for common capital stock, to be depreciated in value in computing that portion of "invested capital" which was attributable to earned surplus. Patents are essentially wasting assets, and in the absence of evidence to the contrary it must be assumed that the depreciation is to be evenly distributed over the life of the patent. In the present case the Board of Tax Appeals found that the group of patents here involved had a reasonable value of $600,000 (the par value of the amount of capital stock issued in exchange therefor) as of the time of the organization of the petitioner and the making of the exchange. The patents were then but newly issued, and the value allocated to them was depreciated in the amount of one-seventeenth thereof for each year which had expired since their acquisition. Since this treats the date of issue of the patents as identical with the date of organization of the petitioner, it is quite as favorable to the petitioner as could reasonably be asked.

It is contended by the petitioner that the decision here approved is inconsistent with Regulations 45, article 843, which provides, in part: "It follows, therefore, that where a corporation in the exercise of its option has not written down the cost of patents, it is not ordinarily necessary to reduce the surplus and undivided profits in computing invested capital, whether the patents have been acquired for stock or shares or for cash or other tangible property." This regulation was predicated upon the supposed analogy between patents and good will, and was in effect until May 28, 1926, when it was amended specifically to require depreciation of patents in arriving at the correct computation of earned surplus and undivided profits. Petitioner contends that it is denied the equal protection of the law, in that all other corporations were taxed for that year in accordance with the provisions of article 843 before its amendment. The premise upon which this contention is based does not appear from the evidence. The use of the word "ordinarily" in the portion of the article above quoted, and the further provision therein that "due consideration will be given the facts in any case in which this rule seems obviously unreasonable," indicate a certain flexibility of application rather than an undeviating practice. We cannot assume that other corporations were not subjected to the same redeterminations and deficiency assessments as in the case of the petitioner, or that article 843 was not applied, as its language indicates, only to cases where the life of the patents had been extended by improvements upon the original, or where it was shown that the patent value was merged more or less completely into the trade-name or other form of good will. This is not the case here.

It is also contended that for the year 1920 the Commissioner and the Board of Tax Appeals failed to allow depreciation of one-seventeenth of the cost of said patents as a deduction from income. The contention of the petitioner throughout was that such patents were not depreciable, but that the full value of $600,000 was properly retained in the financial statement, with its resultant effect of increasing invested capital by increasing the earned surplus. When this issue was decided adversely to petitioner, we are of the opinion that it became obligatory on the Commissioner and the Board of Tax Appeals to make this deduction of depreciation from income for the year 1920. Prior to that time any claim of deduction for depreciation of patents was wholly inconsistent with the

position of the petitioner. The decision of the Board of Tax Appeals in cause No. 5747 raising the last-mentioned question is therefore affirmed upon the issue of the amount of invested capital, but said cause is remanded to the Board of Tax Appeals with instruction to permit the now claimed deduction of depreciation, in the amount of one-seventeenth of the value of the patents, from the income for that year. The decision of the Board of Tax Appeals in cause No. 5748 is affirmed.

### On Petition for Rehearing.

It appearing to the court that the record in the instant case does not disclose any impairment of invested capital properly computed as of the time of organization of the corporate petitioner, or that the amount of invested capital allowed by the Commissioner and Board of Tax Appeals was less than the amount of such invested capital properly computed as of said date of organization, and these questions not having been raised by the pleadings, submitted to the Board of Tax Appeals, or presented to this court, it is ordered that the petition for rehearing, in respect of this issue, be and the same is hereby denied.

It further appearing to the court that the situation in respect of the allowance of annual depreciation of patents for the year 1918 is identical with the situation as to the year 1920, and that the court inadvertently differentiated the two cases, it is further ordered that the opinion heretofore filed be and the same is hereby modified by providing that the decision of the Board of Tax Appeals in cause 5748 be affirmed upon the issue of the amount of invested capital, and that said cause be remanded to the Board of Tax Appeals to permit the now claimed deduction of depreciation, in the amount of one-seventeenth of the value of the patents, from the income for said year 1918.